No. 20-3063

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| **GULED ALI OMAR,** *Appellant,* | * |
| | * |
| **v.** | * |
| | * |
| **UNITED STATES OF AMERICA,** *Appellee.* | * |

\* \* \* \* \* \* \* \* \* \* \*

**Appeal from the Judgment of the United States District Court
For the District of Minnesota
The Honorable Michael J. Davis**

### APPELLANT'S APPLICATION FOR CERTIFICATE OF <u>APPEALABILITY AND INFORMAL BRIEF</u>

Guled Omar, through his attorney, C. Justin Brown, Brown Law, respectfully moves this Honorable Court, pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. Proc. 22(b), to issue a Certificate of Appealability so that he may appeal his case to the Eighth Circuit Court of Appeals.

### I. INTRODUCTION

The granting of a Certificate of Appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Omar has made this showing.

Omar was denied his constitutional right to effective assistance of counsel, and was deprived of the right to make an intelligent choice between pleading guilty and proceeding to trial, when his trial counsel (1) misled him to believe that the Government

was not willing to negotiate a plea with him, (2) failed to meaningfully pursue plea negotiations prior to the Government's superseding indictment charging Omar with more serious offenses, and (3) failed to inform Omar that he could plead guilty even without an agreement from the Government. As a result of these errors, Omar proceeded to trial because he believed – based on his attorney's own documented statements – that he had no other choice. Omar, who was 20 years old and had no record when he was charged, was ultimately convicted on all counts and sentenced to 420 months' imprisonment for a crime in which nobody was hurt.

In its opinion denying relief, the district court improperly credited the unsworn statements of both Omar's trial counsel and Government counsel, while ignoring documentary evidence that contradicted trial counsel's statements and supported Omar's claims.

The district court's decision to deny Omar's motion – and to do so without a hearing despite the documented, material dispute of facts – could be debated by reasonable jurists. It is therefore appropriate for this Court to issue a Certificate of Appealability.

## II. STANDARD OF REVIEW

The determination whether a Certificate of Appealability should issue does not require "full consideration of the factual or legal bases adduced in support of the claims." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017)). Rather, "[a] prisoner seeking a certificate of appealability (COA) need only demonstrate a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing

2

28 U.S.C. §2253(c)(2)). A petitioner satisfies this standard by demonstrating that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Id.*; *see also*, *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

A Certificate of Appealability does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337. Rather, the court must determine whether the district court's resolution was debatable among jurists of reason. *Id*. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338. "The question is the debatability of the underlying constitutional claim, not the resolution of the debate." *Id.* at 342.

### III. PROCEDURAL HISTORY

On May 18, 2015, Omar was charged in a superseding indictment with conspiring and attempting to provide material support to a terrorist organization, in violation of 18 U.S.C. § 2339(B)(a)(1) and (2).[1] Five months later, on October 21, 2015, a second superseding indictment was filed, adding one count of conspiracy to murder outside the United States, in violation of 18 U.S.C. § 956(a); a second count of attempting to provide material support to a terrorist organization, in violation of 18 U.S.C. § 2339(B); and attempted financial aid fraud, in violation of 20 U.S.C. § 1097(a).

---

[1] This was a superseding indictment because a co-defendant, Hamza Ahmed, had already been charged in a single-defendant indictment earlier that year. Ahmed was also charged in the May 18, 2015, superseding indictment.

These charges stemmed from the efforts of Omar and various other young Somali Americans in Minnesota to travel to Syria and join ISIL's fight against the Syrian government. The evidence at trial revealed that, over the course of a year, Omar and several peers discussed plans to travel from the United States to Syria. Omar, however, never left the country, and – aside from having discussed traveling to Syria – there was no evidence that he ever had any concrete or feasible plans to do so.

The Government's evidence also supported the theory that these men were not motivated by a desire to bring harm to the United States. Indeed, this case did not involve any plots to harm Americans or to commit terrorist attacks on U.S. soil (or elsewhere). Rather, these young men were deeply troubled by the brutal civil war in Syria, where the regime of Bashar al-Assad was responsible for heinous acts of violence against innocent Muslims. Their desire to join ISIL was motivated primarily by their desire to fight against the Assad regime.

On June 3, 2016, following a four-week trial, a jury found Omar guilty on all counts. The district court sentenced Omar to 420 months' incarceration on November 16, 2016.

Omar timely filed an appeal to the Eighth Circuit on November 28, 2016, challenging his conviction for conspiracy to commit murder based on an erroneous jury instruction, and challenging his sentence on the ground that it was disproportionate as compared both to his co-conspirators and others similarly situated across the country. The Eighth Circuit affirmed Omar's convictions and sentence on August 10, 2018. *United States v. Farah*, 899 F.3d 608 (8th Cir. 2018). Omar filed a petition for rehearing en banc,

which the Eighth Circuit denied on October 1, 2018. Omar asked his attorney to petition the Supreme Court for a Writ of Certiorari; however, trial counsel admittedly missed the filing deadline, and the requested petition was never filed.

Omar then filed a timely motion pursuant to 28 U.S.C. §2255, raising, among other issues, ineffective assistance of counsel claims related to the plea phase of his case. On July 31, 2020, the district court denied Omar's motion without a hearing and declined to issue a Certificate of Appealability. Omar noted an appeal with the district court on September 28, 2020.

## IV. ARGUMENT

**a. Ineffective assistance of counsel in connection with Omar's efforts to plead guilty.**

Trial counsel was constitutionally ineffective throughout the pretrial phase of Omar's case, and the district court erred in dismissing this claim. Trial counsel knew Omar wanted to plead guilty; indeed, he has conceded that Omar instructed him to seek an offer from and explore plea negotiations with the Government. Nevertheless, he failed to inform Omar of the opportunity to propose a plea prior to the filing of the second superseding indictment, misinformed Omar of the Government's willingness to negotiate with him, and failed to inform him that he could plead open without an agreement. Had Omar received competent and accurate advice during this critical stage of his case, he would not have proceeded to trial, and he would be serving a much lesser sentence.

It is well settled that the Sixth Amendment right to effective counsel extends to all critical stages of a criminal case, including when a defendant is deciding whether to plead

guilty or proceed to trial. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process"); *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel … to offer his informed opinion as to what plea should be entered"); *see also Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir. 1981) (the decision to plead guilty [or go to trial] "cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding … the feasible options"); *Colson v. Smith*, 438 F.2d 1075, 1079 (5th Cir. 1971) (citing to various Supreme Court cases noting the importance of counsel's role "in the process of deciding how to plead"). To safeguard this right, attorneys have a duty to properly advise defendants of all available options, to ensure that the defendant's decision between pleading guilty and going to trial is an informed one. Further, "even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from … the imposition of a more severe sentence." *Lafler*, 566 U.S. at 166.

In this case, trial counsel failed, on numerous occasions, to properly advise Omar in connection with his efforts to plead guilty. Omar was first charged, by criminal complaint, in April 2015. At the time, the most serious charge he faced was conspiring and attempting to provide material support to ISIL, which carried a maximum penalty of 15 years. Omar informed his attorney he wished to plead guilty and instructed his attorney to seek a plea offer from the Government. While the Government declined to extend an offer, it did not foreclose the possibility of a plea. Rather, the Government

6

invited Omar to make an offer first, and stated explicitly that it would consider any offer proposed by Omar's attorney. Thus, it was clear the Government was willing to negotiate with Omar. Trial counsel, however, never informed Omar of this opportunity, and never tendered an offer to the Government for its consideration. This was trial counsel's first unreasonable error.

      The Government also warned trial counsel that a second superseding indictment, charging Omar and his codefendants with conspiracy to commit murder abroad, was forthcoming. This would increase Omar's sentencing exposure to life imprisonment, in addition to dramatically increasing his sentencing guidelines range. The Government further warned that any defendant who wished to plead guilty had a limited time to do so without facing the more serious murder charge, and that any plea *after* the second superseding indictment was filed would have to include a plea to that count. Despite this overt warning from the Government, trial counsel failed to act. He never informed Omar of the deadline for pleading guilty to the less serious charges, nor that the Government would only contemplate a plea to the most serious count if that deadline were missed. This was trial counsel's second unreasonable error.

      Instead of meaningfully pursuing a plea with the Government, trial counsel misinformed Omar, in writing, that "the Government ha[d] been unwilling to discuss any plea negotiation with [him]." *United States v. Omar*, Crim. No. 15-49 (MJD/HB) (D. Minn. July 13, 2020), ECF Doc. 952-2 (Exhibit 2 to Omar's § 2255 Reply Brief). This was patently false, as the Government had explicitly told trial counsel that it would carefully consider any settlement Omar proposed. This was trial counsel's third

7

unreasonable error. Under no circumstance can it be considered reasonable to mislead a defendant as to the Government's willingness to engage in plea negotiations – especially when the defendant has asked and authorized his attorney to pursue such negotiations.

Ultimately, trial counsel informed Omar that, given the Government's unwillingness to negotiate, he had little choice but to proceed to trial.[2] But trial counsel was wrong. Even if the Government declined to extend an offer to Omar, he could have pleaded guilty without an agreement. He could have done this early in the case, prior the being charged with a life-eligible offense. However, Omar never knew of this option because his attorney never told him. Nor did he know that, by pursuing this option, he could have received a three-level reduction that would have lowered his Guidelines range and thus, his sentence. This was trial counsel's fourth unreasonable error.

The failure to advise a defendant of the option to enter an open guilty plea can constitute ineffective assistance of counsel.[3] *See United States v. Booth*, 432 F.3d 542 (3d Cir. 2005) (reversing the district court's summary denial of defendant's § 2255 motion, and finding defendant was prejudiced by attorney's failure to inform him that he could plead open without an agreement). In *Booth*, the Third Circuit found that the prejudice resulting from trial counsel's failure to inform his client of the option to plead open was two-fold: first, it deprived the defendant "of the opportunity to make a reasonably

---

[2] Indeed, trial counsel at one point even seemed to minimize the Government's case against Omar and dissuaded him from "simply tak[ing] any offer the government chooses to make." *Id.*, ECF Doc. 952-4 (Exhibit 4 to Omar's 2255 Reply Brief).
[3] The terms "open plea" and "straight plea" both refer to pleading guilty without an agreement and are used interchangeably herein.

informed decision regarding whether to change his plea or proceed to trial." 432 F.3d at 549-50. Second, "by proceeding to trial and becoming ineligible for the three-level adjustment for acceptance of responsibility, [the defendant] was exposed to an additional 19 to 30 months imprisonment." *Id.* at 548-49.

Here, Omar suffered the same fate. As a result of trial counsel's multiple failures and misrepresentations with respect to the possibility of pleading guilty, Omar missed a critical opportunity to plead guilty to less serious charges, which would have resulted in a significantly lower sentence than the 35 years he is now serving. In addition, because he ultimately went to trial, he unwittingly became ineligible for the three-level reduction for acceptance of responsibility, and he was exposed to a much higher Guidelines sentencing range. Finally, he received a two-level increase for obstruction of justice (which was a result of his testimony at trial). If Omar had known that the Government was waiting on him to propose a plea, or that he could plead guilty without an agreement, he would have done so, and he would likely be serving a much lesser sentence.

**b. The district court erred in dismissing Omar's claim.**

In its opinion denying relief, the district court erroneously concluded that Omar's claim was inherently incredible and contradicted by the record, and thus summarily dismissed Omar's claim. In so doing, the court improperly credited the unsworn statements of trial counsel, while ignoring documentary evidence that both contradicted trial counsel's statements and corroborated Omar's claims.[4]

---

[4] Trial counsel prepared a document in which he answered various questions posed to him by the Government in connection with Omar's § 2255 claims. That document was

9

First, as to trial counsel's failure to negotiate a plea prior to the filing of the second superseding indictment, Omar presented a sworn affidavit indicating that he told his attorney he wanted to plead guilty early in the case. While the district court did not credit Omar's sworn statements, this was corroborated by trial counsel's own statement (albeit unsworn) that Omar instructed him to explore plea negotiations with the Government, and that Omar wanted to have options. The fact that Omar instructed his attorney to inquire as to a plea from the Government reflects his willingness to plead guilty. Nevertheless, the district court seems to have credited only trial counsel's after-the-fact, unsworn assertion that Omar never told him he wished to plead guilty, while ignoring other evidence – including trial counsel's own contradictory statements – suggesting otherwise.

Omar also stated, under penalty of perjury, that trial counsel never informed him of the Government's invitation to propose a resolution, nor that he had a limited time to do so before the more serious charges were filed. He corroborated this claim with a letter written by trial counsel one day after the second superseding indictment was filed, in which counsel told Omar – incorrectly – that the government had been unwilling to discuss any plea negotiation with him. Such a statement, in addition to being false, is entirely inconsistent with the Government's stated willingness to consider an offer from Omar. Thus, it is hard to believe that, prior to this letter, trial counsel had conveyed the

---

submitted as an exhibit to the Government's response opposing Omar's motion; however, that statement was neither a sworn affidavit nor an unsworn declaration, and is thus of questionable validity. *See* 28 U.S.C. § 1746 (setting forth the requirements of an unsworn declaration when submitted in place of an affidavit or other sworn statement).

Government's position. Nevertheless, the district court concluded that "the record is clear that Petitioner was informed … that he could propose terms on which to resolve his case." *United States v. Omar*, Crim. No. 15-49 (MJD/HB) (D. Minn. July 31, 2020), ECF Doc. 959 at 13. Contrary to the court's assertion, however, none of the documents submitted by trial counsel or the Government in response to this claim support this finding, and it must be reversed.[5]

Finally, Omar's claim that trial counsel never informed him of the possibility of pleading guilty without an agreement was corroborated by trial counsel's letter recounting his efforts to resolve Omar's case short of trial. Glaringly absent from this letter is any indication that counsel ever advised Omar that he could plead guilty despite the Government's unwillingness to extend an offer, or that Omar rejected such a suggestion.[6] Rather, this letter reflects trial counsel's erroneous belief that the Government was unwilling to negotiate with Omar, and that the only other course of

---

[5] The district court is relying on an alleged assertion by the Government that Omar was personally informed, at a reverse proffer, that he could submit a plea proposal to the Government for its consideration. *Id.* at 8. However, the district court seems to be misconstruing statements made in the factual section of the Government's response to Omar's motion. *See* Govt. Opp. to Omar's § 2255 Motion (ECF Doc. 945), at 14 (discussing the reverse proffer, and *then* noting its invitation for defendants to submit proposed plea offers for the Government's consideration). More significantly, the evidence submitted by both Omar and the Government reflects that it was not until September 8, 2015 – more than two weeks after the reverse proffer – that the Government informed trial counsel, in an email, that it would not extend an offer to Omar, and that it would consider any proposal submitted by Omar. Thus, Omar could not have been personally aware of the Government's position at the time of the reverse proffer.
[6] Nor is there any indication in this letter that trial counsel told Omar of the Government's invitation to propose a resolution, or that Omar declined to do so because he was unwilling to plead guilty. This is additional contemporaneous corroboration of Omar's claims that the district court improperly ignored.

11

action was to proceed to trial. *See United States v. Omar*, Crim. No. 15-49 (MJD/HB) (D. Minn. July 13, 2020), ECF Doc. 952-6 (Exhibit 6 to Omar's § 2255 Reply Brief). Not only is this letter strong evidence that Omar did not know of the option to plead guilty without an agreement; it also undermines trial counsel's current claim that he did advise Omar of this option, as such advice is conspicuously absent from all of trial counsel's communications. The district court's failure to credit this evidence, and to instead accept trial counsel's unsworn assertions as true, was error, and it must be reversed.

**c. The district court erred in finding that Omar could not establish prejudice.**

The prejudice Omar suffered as a result of trial counsel's deficient performance cannot be overstated. Prior to the filing of the second superseding indictment, the most serious offense he was facing carried a maximum penalty of 15 years. His Guidelines range at that time, even with the terrorism enhancement, would have been 292 to 365 months – more than <u>ten years</u> less (from the bottom of that range) than the sentence he is now serving.[7] That exposure skyrocketed to life imprisonment after the second superseding indictment was filed. If trial counsel had properly advised Omar – either of the option to tender a plea proposal to the Government or to plead open without an agreement – there is a reasonable probability that Omar would have pleaded guilty and received a lesser sentence.

---

[7] Omar's base offense level for the material support charge would have been 26. USSG (2015), § 2M5.3; *see also* PSR at 44. After subtracting three levels for acceptance of responsibility and adding 12 levels pursuant to the terrorism enhancement (USSG § 3A1.4), Omar's adjusted offense level would have been 35. With a criminal history category VI (also pursuant to the terrorism enhancement), Omar's sentencing range would have been 292-365 months.

Despite this demonstrable prejudice, the district court erroneously concluded that Omar could not establish prejudice merely because he maintained his innocence at trial. The district court relied on *Sanders v. United States*, 341 F.3d 720 (8th Cir. 2003), and *Chesney v. United States*, 367 F.3d 1055 (8th Cir. 2004), for the proposition that "a defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty" with competent advice. *Sanders*, 341 F.3d at 723. But these cases are inapposite for several reasons. First, those cases involved allegations of drug distribution and firearm possession, in which a defendant who maintains his innocence typically does so with a factual defense that he did not actually possess any contraband, or that he was not present at the crime scene. As these cases recognize, such a defense would be inconsistent with a subsequent, post-trial claim that the defendant would have admitted that he *did* possess the contraband, or that he *was* present at the crime scene.

What the district court ignores, however, is that Omar's defense centered on a lack of intent – which is <u>not</u> inconsistent with an acknowledgment that the Government could nevertheless convince a jury of his guilt beyond a reasonable doubt. The central issue in this case was not whether Omar had actually associated with people who traveled to Syria; nor whether he had himself discussed traveling to Syria; nor whether he had planned to travel to California. Omar never denied these things. Rather, the issue was whether these actions were motivated by or manifested a criminal intent. Indeed, even trial counsel pointed out to Omar that his conduct did not necessarily establish any

13

criminal intent. In his August 31, 2015, letter to Omar – after the reverse proffer – trial counsel stated:

> "Importantly, AUSA Winter could cite only a single comment which, according to him, espoused a desire to join with ISIL after arriving in the Middle East. This seems to be a relatively weak element in the government's case. While the prosecution may be able to show a generalized desire to live abroad in an Islamic state, *this does not mean that you or your companions simultaneously sought to support ISIL or any other international terrorist organization*."

*United States v. Omar*, Crim. No. 15-49 (MJD/HB) (D. Minn. July 13, 2020), ECF Doc. 952-4 (Exhibit 4 to Omar's § 2255 Reply Brief) (emphasis added). Under these circumstances, it is more plausible that a defendant would nonetheless agree to plead guilty, especially if presented with overwhelming (albeit circumstantial) evidence of guilt.

In addition, both the *Sanders* and *Chesney* courts pointed out that the petitioners in those cases had not submitted any affidavits or other evidence supporting their claims, whereas their trial attorneys had submitted either a sworn affidavit or other evidence contradicting the petitioner's statements. *See Sanders*, 341 F.3d at 722; *Chesney*, 367 F.3d at 1059-60. But the contrary is true in this case: not only did Omar submit an affidavit (under penalty of perjury) regarding his desire, intention, and efforts to plead guilty; he also submitted independent evidence corroborating his claims, whereas his trial attorney did not submit any sworn statements (and the statements he did submit were self-contradictory and also tended to corroborate Omar's claims). The district court's reliance on these cases was thus misplaced.

While Omar's claims of innocence were a factor for the district court to consider, they were by no means dispositive under the circumstances of this case, and they do not render implausible his assertion that he would have pleaded guilty with effective representation. The district court's refusal to credit his independent evidence, and its finding that Omar did not establish prejudice, were thus erroneous, and its judgment must be reversed.

**d. The district court erred in failing to hold an evidentiary hearing.**

The district court also erred in denying Omar's motion without a hearing. A court must hold a hearing on a § 2255 motion "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A record "conclusively show[s]" a petitioner is not entitled to relief only if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). Here, the record does not conclusively show that Omar is not entitled to relief. Rather, the district court found that Omar's claims were inherently incredible and contradicted by the record. However, as argued above, this finding was erroneous because the court ignored independent evidence that corroborated Omar's claims, while crediting only certain, cherry-picked assertions from trial counsel's unsigned, unsworn narrative that were conclusory and self-contradictory.

The parties have generated a number of material factual disputes that should not have been resolved without a hearing. On one hand, Omar presented evidence, in addition

15

to his sworn affidavit, reflecting that (1) he wanted to plead guilty, and that he conveyed this to his attorney; (2) his attorney failed to inform him of the opportunity to propose a resolution, and the deadline for doing so; (3) he was misled to believe that the Government was not willing to negotiate with him; and (4) his attorney never told him he had the option of a straight plea, nor that this option would reduce his sentencing exposure.

The Government, on the other hand, submitted unsworn statements from Omar's trial counsel disputing Omar's claims. This constitutes a dispute of material fact requiring an evidentiary hearing. *See Grady v. United States*, 269 F.3d 913, 918 (8th Cir. 2001) (affirming that a material dispute of fact between the parties, generated by the parties' competing affidavits, prevents summary judgment in favor of the Government); *Blackledge v. Allison*, 431 U.S. 63, 82 n.25 ("When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive.") (internal quotations marks and citations omitted). It was improper for the district court to accept trial counsel's unsworn and uncorroborated statements without conducting an evidentiary hearing.

Reasonable jurists could disagree on the questions raised by Omar's motion, namely: did trial counsel perform deficiently at various points throughout the pretrial phase of Omar's case? Is there a reasonable probability that, had Omar been adequately apprised of all his options and of the Government's position with respect to a plea, he would have pleaded guilty and received a lesser sentence?

If the answers to these questions are debatable – as they are – then the requirements of a Certificate of Appealability have been met.

## V. CONCLUSION

Omar has made a substantial showing that his constitutional rights were violated in this case. Reasonable jurists could debate whether Omar received ineffective assistance during the pretrial phase of his case. Appellant respectfully requests that this Court issue a Certificate of Appealability.

Respectfully submitted,

_____/s/_____
C. Justin Brown
Brown Law
1 N. Charles Street, Suite 1301
Baltimore, MD 21201
Tel: 410-244-5444
Fax: 443-524-9634
brown@cjbrownlaw.com

# CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2) and Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,587 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word software, Times New Roman font, 14 point proportional type size.

/s/_____
C. Justin Brown
*Attorney for Appellant*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2020, a copy of the foregoing *Application for Certificate of Appealability and Informal Brief* was served on all parties via CM/ECF.

_____/s/_____
C. Justin Brown